We will now move to appeal 24-2682, Kelley-Lomax v. City of Chicago, and Mr. Flaxman will begin with you. May it please the court, the defendant police officers in this case arrested Jevarreo Kelley-Lomax and charged him with possessing a gun. At the time of the arrest, Mr. Kelley-Lomax was sitting in a car. There were three other men sitting in the car. Kelley-Lomax was in the passenger seat, and after removing all the men from the car, police found a gun hidden under the passenger seat. We know from the testimony that the officer who found the gun had to kneel down to find it, so this gun was not visible to Mr. Kelley-Lomax from where he was sitting. Mr. Kelley-Lomax didn't own or control the car where the gun was found. He never made any movements toward the gun. There were no fingerprints, and no one ever saw Mr. Kelley-Lomax with the gun. There was evidence that it was loosely connected. Another man in the car to the gun, a 911 caller had said that a man in a black puffy coat with a ring around it was holding a gun. One of the four men in the car had a blue jacket with stripes around it. Mr. Kelley-Lomax didn't match that description. He was wearing a black hooded sweatshirt. Despite the lack of evidence against Mr. Kelley-Lomax, the officers arrested him and charged him with possessing a gun. To support the arrest and the charges, the officers relied on two falsehoods. First, they claimed that the 911 caller had given a description of two armed men. The call is in the record. The relaying of the call from the dispatcher is in the record. He only identified one person, the man with the stripe around his jacket. There was no description of somebody who met what Kelley-Lomax was wearing. The officers relied on that false description of a man who met Kelley-Lomax's clothing to arrest him and to charge him. The officers also claimed that they viewed a surveillance video which showed two men with guns, one of whom matched Kelley-Lomax. Why should we conclude that these representations are lies and not just confusion? This court shouldn't decide either one of those. It's a question for a jury. I think that if the officers are able to convince a jury somehow we misheard what the dispatcher told us and we thought that there was a description of two men, they can make that argument to a jury. We'll play what the dispatcher told them and say to the jury, don't draw that conclusion. The conclusion you should draw is that they only heard a description of one man. But those are credibility questions. They're questions about evidence that this court and the court below shouldn't decide on a summary judgment. There's a challenge, though, that we have here. Let me ask this with regard to the Gerstein hearing that happened quite soon afterwards. Is there any evidence in the record to suggest that the probable cause analysis changed after Kelley-Lomax's Gerstein hearing? Yes. What is that? The evidence about the surveillance video is nowhere to be found until the grand jury testimony, which came after the Gerstein hearing. Right. There's more evidence that happens at the grand jury, but the Gerstein hearing, the probable cause standard itself didn't change. PC, what constitutes PC, remains the same, right? I guess if the question is, if there was probable cause at the time of the Gerstein hearing, would there also be probable cause later at the grand jury hearing? Correct. And I think the answer to that is yes, that we're not arguing that there was a diminution of evidence or something that took away from the other evidence. So much of this appeal seems to turn on the quantum of evidence. Is it at or below probable cause or arguable probable cause? Obviously, it's far below conviction. This was a 15-minute trial where the directive verdict was granted almost immediately. That's right, and I think that's because the Illinois cases, and one case from this court, so plainly say, if all the evidence you have is a gun under a seat, you have not shown the elements to... That's conviction, though. Conviction and PC are different, right? Yes. Conviction and probable cause, there are different standards, but in every case when this court considers probable cause, it says, we look to the elements of the offense under Illinois law, and those elements are fleshed out in cases about conviction. I'm sure there are some cases about conviction that turn very expressly on, was there enough evidence beyond a reasonable doubt, but the cases we're talking about never get to that. They apply rules about what the elements of the offense are, what Illinois law says is the definition of constructive possession. The cases you showed us were cases, as you've said, about conviction, where an appellate court overturned the conviction because the state didn't put forth enough evidence, that the defendant was aware there was a firearm under... Correct, no. Under his seat. Were you able to locate any cases where the indictment was thrown out for that reason? In other words, the procedural posture we have here, which is probable cause to arrest, and then probable cause to continue the prosecution. So, I'm not aware of cases where an indictment was thrown out based on that. I mean, I think in the posture would be that the evidence that was lacking wouldn't come out just through the indictment. When the state and the grand jury votes to charge, the elements are not going to get tested until the trial. So, the answer is no, we don't have cases about an court, as I said, consistently rely on elements of offenses as defined in cases from convictions. The example that we pointed to was Taylor v. Hughes, where this court went through seven different cases that the Illinois courts decided on appeals from conviction. A similar thing in Young v. Chicago, where this court looked at Illinois cases decided after convictions. The difference with Taylor, though, is Taylor was hesitating to draw certain conclusions. Here, the relevant facts on which the officers could find probable cause are not disputed, because there's not that challenge below. Illinois courts have developed a substantive law of constructive possession. It very well could be the case that the state's attorney's office said, do not dismiss cases involving guns. So, the prosecutor's got to take the trial. Case gets to trial. Fifteen minutes later, the defendant is acquitted. The distinction with Taylor is, here, the relevant facts are undisputed, and there, they weren't, right? I think, well, no. I don't, that's not what I, the part of Taylor that I'm talking about is where the court carefully analyzed Illinois state cases and said how an Illinois court would treat these facts. In Taylor, though, it wasn't clear whether the gun could be connected to Taylor. I think that there were also disputed facts in Taylor that are somewhat different than ours, but I wouldn't say the facts are undisputed in this case. I think there are a lot of cases that acknowledge the probable cause is normally a jury question, and what the city, I think, is going to argue to you is this chain of inferences from what the officers did observe, and whether to believe that chain of inferences, whether to credit it as sufficient to show probable cause, should be a question for the jury. I would, I do want to just, one more point, I'll ask the court to consider. Actually, Judge Lee has a question. Oh, okay. Go ahead, Judge Lee. The, if I could talk about qualified immunity in the context of the false arrest claim. So, you point to Wise, and the parties just talk about People v. Wise, and about its ruling about constructive possession. But Wise, at least in my reading, specifically states that it's not discussing the aggravated, unlawful use of a weapon statute, right? And, in fact, the dissent takes pains to say that what the majority is dealing with here, whatever it might be, it's not with the aggravated, unlawful use of a weapon. And so, my question is, given that, is, under Illinois law, is the requirements of constructive possession in the context of guns and vehicles clearly enough established to, you know, to, for qualified immunity to apply? So, I'm sorry, I don't have Wise in front of me. Best of my recollection, was it unlawful use of a weapon by a felon was the offense, and not? Right. Aggravated? No, no, the, right, in Wise, it was possession by a felon. And here, we're talking about aggravated, unlawful use of a weapon. Yeah, and I don't think there is any difference between the definition of possession. The Bailey case, which is the one that we rely on. No, I understand that, you know, we, training the law might not think there's a difference, but, you know, where the Illinois Supreme Court says expressly, we're not dealing with this other statute. You know, I'm not sure how we can expect police, a reasonable police officer, to then think, oh, well, okay, well, then, what the rule in Wise does apply to the unlawful, aggravated, unlawful use of a weapon statute. And I don't, because I don't know that sentence in Wise that you're referring to, so if it's, if it's something that's important to court, I can file a supplement on it, but I don't have an answer, as I understand, Your Honor. Thank you. I will be granting rebuttal time to you. Thank you. Thank you. We'll now move to the argument on behalf of the city, Mr. Henriques. May it please the court. One of the elements of the gun possession offense with which Kelly Lomax was charged is constructive possession of a gun, and he acknowledges that it is the only element he disputes in this case. That element requires a showing that the arrestee had both access to the gun and knowledge of the presence of the gun. Kelly Lomax does not dispute that the gun was found under the car's front passenger seat on which he was sitting, and he does not argue that he lacked access to the gun. His only challenge concerns his knowledge that the, whether the gun was there. And that was the basis for the acquittal. That was the basis for the acquittal. One of Kelly Lomax's claims in this case is the Fourth Amendment claim against the officers for false arrest. Based on the principles the Supreme Court set forth in its decision in the Manuel case, that claim necessarily seeks relief only for Kelly Lomax's detention that began at the moment of his arrest and ended the next day at his bail hearing or Gerstein hearing. So on that claim, the only issue is whether, at the moment of his arrest, the facts of record viewed from the standpoint of objectively reasonable police officers amount to probable cause that he knew the gun was under his seat. In that regard, the audio portion of the recording of the police officers' body-worn cameras is undisputed evidence that the dispatcher informed the officers that the 911 caller told her he saw at least six men standing outside a vehicle at the gas station, one of whom was wearing a dark jacket with stripes, and several of whom were pointing guns at the caller. But is there any evidence that the dispatcher told them that one of the people in possession of the gun had just a black jacket? There is no evidence of that. Right. So why isn't that a factual dispute? Because the officers say that they were told that one of the gun holders had just a simple black jacket and another had a black jacket with a white ring around the arm. And Mr. Kelly Lomax combs through the record and says, you know, there's no evidence that the dispatcher told him that. Because isn't that important for the inference of knowledge that you would have the officers draw? No, I think it's irrelevant. It's completely irrelevant. So even if the officers were only told that there was one person with a gun and he had a black jacket with the white stripe on his sleeve, even if that's hypothetical, that's only what the officers knew when they came onto the scene. What other facts would support the officer's reasonable belief that Mr. Kelly Lomax knew that the gun was there, other than just proximity? Okay. Well, it's undisputed from the body-worn camera of the officers that the dispatcher said that there were several men standing at the gas station, one of whom was wearing a dark jacket with stripes and several of whom were pointing guns at the caller. And it is also undisputed that when the officers then arrived at the gas station, they encountered a vehicle containing four passengers, one of whom was a man wearing a dark jacket with stripes. And it is also undisputed that when the officers then searched the car, they found a gun under the car's front passenger seat on which Kelly Lomax had been sitting. The other passengers in that car, they weren't wearing black jackets? Yes, they were. So why didn't they arrest the other men as opposed to Kelly Lomax? The only reason was that Kelly Lomax was sitting on the seat. And so I'm just trying to understand what other than proximity led the officers to arrest Kelly Lomax. Well, I don't know why they didn't arrest the others. I have no idea. The only question in this case is whether there was probable cause to arrest Kelly Lomax, who would have, the officers would certainly have had reason to believe that Kelly Lomax would have known after the guns had been pointed at the caller and people returned to the car, that he would have seen the gun being placed under the seat at that moment. He was there for the entire event. The only importance of the man with the blue jacket is that it indicates that the car that officers encountered was the right car. It had the man with the blue jacket in it. That's the only reason that the blue jacket is relevant. The black jackets aren't relevant at all because all three of the other people had them. What's relevant is that the officers found the gun under the seat of a person who would have seen, or unless he put it there himself, would have seen the gun being placed under the seat at the gas station after the people who got out of the car and were pointing guns got back into the car. There was some discussion in the briefing about whether or not it would be possible for the person sitting behind the passenger seat to slide the gun under the seat. What is your response to that? Well, I think the evidence is the officer said they couldn't have happened, but it doesn't matter at all. That's because of the green propel bottle, right? That's right. There were other obstacles under the seat, but whether or not other people might have put the gun under the seat or not, we're talking about probable cause. Would officers have had probable cause to believe that whoever put the gun under the seat, Kelly Lomax would have seen the gun being placed under the seat when the other men got back into the car, or at least the officers would have had reason to believe that he would have seen when the men who pointed the guns got back into the car that they put that gun under the seat on which he was sitting, he had access to it. It's not clear that any of the others did have access to it. He certainly had access to it. There was probable cause to believe not only that he had access to it, but that he knew it was there. Could I ask you a question about the malicious prosecution claim? After the Gerstein hearing, there was a grand jury proceeding, and the officer testifies about what was on the videotape. And the plaintiff raises all these issues about why that testimony lacked credibility. If, in fact, Officer Garduno did fabricate the evidence before the grand jury, wouldn't that tend to support the Fourth Amendment malicious prosecution claim? And then wouldn't whether or not Officer Garduno actually fabricate the evidence be a question of fact for the jury to decide? No, I don't think so. I think that just like how the number of men involved in the case, whether there was two or one that the dispatcher told the police about, or whether the officers mistakenly thought that there were two rather than one, it's also true that nothing about the video is relevant to this case. Nothing. How is that possible? Because when I looked at grand jury testimony, it strikes me that the main evidence that the officer offered to the grand jury was what was on the video. And so I don't understand the position that the video and statements about the video have no relevance to the grand jury's determination. I'm on page four. The question prosecutor says, did your investigation reveal that depicted on the video surveillance system were subjects from the vehicle? And he says, correct. And the pointing guns, handguns in the direction of the Range Rover. And the officer says, correct. I mean, that's basically the whole sum and substance of his testimony. And so if that was in fact fabricated, wouldn't that give rise to a potential malicious prosecution claim? I don't think so. And the reason is that the important thing is that it doesn't change the fact that what the dispatcher told the officers was that there was a man with a stripe around, a dark jacket with stripes at the location where he or other men were pointing guns. And that after they got to the scene, they identified the car with a man with a blue jacket and then they searched the car and found a gun under the seat of one of the passengers. Nothing about the video changes that at all. The video, even if the video showed that no men had guns, even if that were completely false, it doesn't change the fact that when the officers arrived there, they had been told that there was a car there, where a man with a blue jacket was standing next to a car. They found that car, they found the blue man, and then they found the gun under the seat of one of the passengers who had access to the car. There's reason to believe that all of the people, when they got back into the car, knew that there was a gun under the seat. That's why there was probable cause. And that's the only issue in the case, whether there's probable cause to believe that there was a gun, that he knew, that the person in that seat, Kelly Lomax, knew that the gun was under his seat. That's the only thing. I think the video is extraneous to that. It's a misleading aspect of the case. Thank you, Mr. Enriquez. Thank you. Mr. Flaxman, we'll turn to you now for a rebuttal argument. We'll give you two minutes. Thank you. The reason that the video is important is because the probable cause inquiry at the stage where we're talking about, at the grand jury, is different. I thought you told me it was not. You told me the PC stayed the same throughout. Well, what I told you was that in this case, there was no dissipation of probable cause, so that we're not saying that there was some evidence that stopped being relevant. I didn't mean to say that the evidence was the same at both of them, because what we see is that at the grand jury, the evidence was presented and was used to continue that prosecution in a significantly different way than when we were talking about earlier, when we know that the prosecution was initiated and the arrest was made at the time of the arrest. So there are two different frames in this court's cases recognize that the standard for probable cause is different at the time of the arrest. There are other matters that were talked about that most of them are disputes of fact, that counsel for the defense said that the showing that it's the same car matters, and the court should look at the difference between colors, the difference of where the pump it as it was, and those are questions the jury should consider. That's why we asked the court to reverse. Thank you, Mr. Flaxman. Thank you, Mr. Enriquez. The case will be taken under advisement. That'll complete the court's arguments for this matter.